UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

XPO ENTERPRISE SERVICE INC.,

<em>Plaintiff,</em>

– against –

CITIBANK, N.A.,

<em>Defendant.</em>

---

**MEMORANDUM & ORDER**
23-cv-07518 (NCM) (JAM)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff XPO Enterprise Service Inc. ("XPO") brings this negligence action against Citibank, N.A. ("Citibank"), arising out of an attempt by plaintiff to execute a state court judgment obtained against non-party Coshell Holdings LLC ("Coshell"). Citibank removed the case to federal court pursuant to the Court's diversity jurisdiction. *See* Not. of Removal, ECF No. 1. Before the Court is defendant Citibank's motion for summary judgment. *See generally* Mot.[1] For the reasons stated below, defendant's motion is **GRANTED**.

BACKGROUND

I.        **Statutory Background**

Article 52 of the C.P.L.R. sets forth procedures in the State of New York for the enforcement of money judgments. *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879

---

[1]        The Court hereinafter refers to defendant's Memorandum of Law in Support of its Motion for Summary Judgment, ECF No. 32-7, as the "Motion"; plaintiff's Memorandum of Law in Opposition of defendant's Motion, ECF No. 33-8, as the "Opposition"; and defendant's Reply Memorandum of Law in Further Support of its Motion, ECF No. 34, as the "Reply."

F.3d 462, 468 (2d Cir. 2018) (citing N.Y. C.P.L.R. §§ 5201–5252). These procedures "may include the imposition of a restraining notice against a judgment debtor's bank account to secure funds for later transfer to the judgment creditor through a sheriff's execution or turnover proceeding." *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 66 (2013). Specifically, C.P.L.R. § 5222 ("Section 5222") authorizes "an attorney for [a] judgment creditor . . . as an officer of the court, [to] serve a restraining notice on a third party who . . . is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor has an interest." *CSX Transp.*, 879 F.3d at 470 (quoting Section 5222(a)–(b)). A party subject to such a restraining notice is "forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt except upon direction of the sheriff or pursuant to an order of the court." *Id.* (quoting Section 5222(b)).

## II.    Factual Background[2]

On or about November 10, 2021, plaintiff's counsel served on defendant Citibank a restraining notice issued pursuant to Section 5222. Def.'s Statement of Material Facts ("56.1 Stmt.") ¶ 3, ECF No. 32-1. The restraining notice sought to restrain bank accounts maintained in the name of Coshell in order to satisfy a state court judgment plaintiff obtained against Coshell in the amount of $90,328.69 (the "Restraining Notice"). 56.1 Stmt. ¶ 3. By letter dated November 23, 2021, defendant disclosed to plaintiff that it set

---

[2]    The facts set forth herein are taken from defendant's 56.1 statement. The Court notes that plaintiff failed to submit a 56.1 statement or counter-statement in response to defendant's 56.1 statement as required by Local Civil Rule 56.1. Accordingly, the statements contained in defendant's 56.1 statement are deemed admitted for purposes of this motion. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

aside $180,657.38 in compliance with the Restraining Notice. 56.1 Stmt. ¶ 4. However, defendant received a letter on plaintiff's counsel's letterhead dated November 22, 2021 (the "Release Letter"), directing Citibank to release the funds it had set aside in compliance with the Restraining Notice. 56.1 Stmt. ¶ 5.[3] Accordingly, one week after receiving the Release Letter, defendant lifted the restraint on Coshell's accounts. 56.1 Stmt. ¶ 8.

Plaintiff filed suit in New York State court on September 22, 2023, bringing one claim for negligence, one claim for negligent supervision, and one claim for "violating plaintiff's restraint." 56.1 Stmt. ¶ 1. On October 9, 2023, defendant removed the case to federal court. *See* Not. of Removal, ECF No. 1. Following completion of discovery, defendant filed a request for a pre-motion conference in anticipation of a motion for summary judgment. *See* Def.'s Letter Mot. for Pre Mot. Conference, ECF No. 23. The Court held a conference and set a briefing schedule on defendant's motion. *See* Minute Entry dated September 12, 2024. In its order setting the briefing schedule, the Court ordered the parties to "brief the jurisdictional question raised at the pre-motion conference[,] [s]pecifically, whether claims arising out of Article 52 of the New York Civil Practice Law and Rules can provide the basis for the Court's jurisdiction." ECF Order dated September 19, 2024. Defendant moved for summary judgment, and plaintiff opposed defendant's motion. *See generally* Mot.; Opp'n.

---

[3]    Defendant's 56.1 statement does not make clear whether the Release Letter was in fact received before defendant informed plaintiff of the restraint placed on Coshell's accounts. *See generally* 56.1 Stmt. However, for the reasons set out more fully *infra*, plaintiff fails to adduce evidence that the timing of when the letters were sent and received is a material fact for purposes of determining whether defendant negligently complied with Section 5222.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021).[4] Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

The movant "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). Where the moving party meets their burden, the non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). The court need only consider admissible evidence, and is not obligated to conduct an independent review of the record to identify a factual dispute. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

**DISCUSSION**

### III.    Jurisdiction

As a threshold matter, the Court must determine whether it has jurisdiction over this dispute. *See Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) (explaining that subject matter jurisdiction is "not waivable and may be raised at any time by a party or by the court sua sponte"). Pursuant to the diversity statute, a party

---

[4]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

4

may remove "any civil action" brought in state court that originally could have been brought in federal court. 28 U.S.C. § 1441(a); *see also Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003). "Civil action" for purposes of the diversity statute "has long been interpreted to require a separate suit that is not ancillary, incidental, or auxiliary to a suit in state court." *Wimbledon Fin. Master Fund, Ltd. v. Sage Grp. Consulting Inc.*, No. 17-cv-06563, 2017 WL 6034649, at *2 (S.D.N.Y. Nov. 21, 2017); *see also Multibank, Inc. v. Access Glob. Cap. LLC*, No. 17-cv-03467, 2017 WL 6028535, at *4 (S.D.N.Y. Dec. 4, 2017) ("Courts in this Circuit have long held that parties may not remove cases that are ancillary to civil actions brought in state court."). Thus, the action sought to be removed "must be independent from the underlying [state] litigation" for the Court to exercise jurisdiction. *Multibank*, 2017 WL 6028535, at *4; *see also High Speed Cap., LLC v. Corp. Debt Advisors, LLC*, 339 F. Supp. 3d 137, 141 (W.D.N.Y. 2018).

In the context of proceedings related to garnishments, "the question of ancillary jurisdiction hinges on whether the action is one to collect a judgment or to establish liability on the part of a third party." *Multibank*, 2017 WL 6028535, at *5 (quoting *Epperson v. Ent. Express Inc.*, 242 F.3d 100, 104 (2d Cir. 2001)). Where an action is to collect or enforce a judgment obtained in the principal suit, the action is ancillary. *See id.* On the other hand, where an action seeks to establish the liability of a third party, the action is independent. *See id.*; *see also Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642, 645 (S.D.N.Y. 2007) (explaining that actions which seek to establish the liability of a third party "require[] an independent basis for subject matter jurisdiction because the court is presented with a substantive theory seeking to establish liability on the part of a new party not otherwise liable"). Courts distinguish between ancillary "post-judgment proceedings to collect an existing judgment" and proceedings "that raise an

independent controversy with a new party in an effort to shift liability." *Epperson*, 242 F.3d at 106.

The instant action is independent from the underlying proceedings against Coshell because it raises "an independent controversy" with defendant "in an effort to shift liability," *see id.*, and is therefore properly removable. Although the sequence of events which gave rise to plaintiff's claims stem from a judgment obtained in state court proceedings, plaintiff does not seek "to enforce [that] existing judgment" in the instant action. *Multibank*, 2017 WL 6028535, at \*5. Instead, plaintiff brings new theories based on negligence and, ostensibly, a violation of Section 5222, to shift liability to a third party: Citibank. *See* Opp'n 6–8.[5] This "requires proof on facts and theories different from those underlying the judgment," and thus the instant action is "not an attempt simply to collect a judgment" rendered by the state court. *Knox*, 477 F. Supp. 2d at 648 (quoting *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 498 (1st Cir. 2000)); *cf. High Speed*, 339 F. Supp. 3d at 143 ("Plaintiff's petition commences a special proceeding . . . pursuant to CPLR 5225(b) and 5227 to satisfy the judgment [the] [p]laintiff obtained in state court . . . and it invokes no other claim for relief. Therefore, the underlying petition is ancillary to that state court proceeding and not removable to federal court.").

Accordingly, because the instant action is not ancillary to plaintiff's proceedings against Coshell, the case is properly removable pursuant to the Court's diversity jurisdiction.

---

[5]    Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

## IV.    Negligence

Because this is a diversity action arising out of events that occurred in New York, the substantive law of New York governs plaintiff's claims. *Tsvetkov v. United States*, No. 18-cv-02761, 2022 WL 986163, at *5 (E.D.N.Y. Mar. 31, 2022). "To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006). Defendant argues that plaintiff's negligence claim is insufficient as a matter of law because: (1) defendant did not owe plaintiff a duty of care; and (2) even if defendant did owe plaintiff a duty of care, plaintiff fails to demonstrate that defendant breached such a duty. Mot. 8–9.

### A. Duty

As with any negligence action, the Court must first determine whether defendant owed plaintiff a legally recognized duty of care. *See Sanchez v. Ehrlich*, No. 16-cv-08677, 2018 WL 2084147, at *6 (S.D.N.Y. Mar. 29, 2018). Plaintiff contends that defendant owed it "a duty of reasonable care to prevent harm to [p]laintiff," as well as a "statutory duty to obey the restraining notice" pursuant to Section 5222. Opp'n 7. Defendant argues that plaintiff provides no support for its contention that defendant owed it a common law duty of care; instead, plaintiff "relies on no more than rank speculation in assuming the existence of such a duty." Mot. 9. Defendant further argues that plaintiff "incorrectly concludes" that defendant owed a statutory duty to plaintiff to obey the restraining notice, specifically because plaintiff "cannot demonstrate that it is within some class" for whom Section 5222 was intended to protect. Mot. 9–10. The Court addresses each theory of duty in turn.

i. Common Law Duty

Generally, under New York law, "[a] bank owes no duty of care to non-customers." *Targoff v. Wells Fargo Bank, N.A.*, 122 N.Y.S.3d 493, 497 (N.Y. Sup. Ct. 2020); *see also Johnson v. Chase Manhattan Bank*, No. 98-cv-08173, 2000 U.S. Dist. LEXIS 5587, at *15 (S.D.N.Y. Apr. 27, 2000) ("The general rule is that a bank does not owe a duty to a non-customer third-party."); *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 229 (S.D.N.Y. 2022). This is in accordance "with the almost universal rule that banks do not owe a common law duty of care to third-party customers." *Empire City Cap. Corp. v. Citibank, N.A.*, No. 10-cv-02601, 2011 WL 4484453, at *9 (S.D.N.Y. Sept. 28, 2011) (collecting cases); *see also Lerner*, 459 F.3d at 286 ("As a general matter, banks do not owe non-customers a duty to protect them from the intentional torts of their customers.").

Plaintiff fails to cite to a single authority in support of its contention that defendant owed it, a third-party, a common law duty of care. *See* Opp'n 6–7. While plaintiff alleges that Coshell "had assets in an account at Citibank," plaintiff does not proffer any evidence that plaintiff itself was one of defendant's customers. Compl. ¶ 8, ECF No. 1-1. The evidence demonstrates that the extent of plaintiff's relationship vis-à-vis defendant was plaintiff's status as a judgment creditor of one of defendant's customers, i.e., a third-party. *See* 56.1 Stmt. ¶ 3; *see also* Compl. ¶ 4. And plaintiff does not supply any authority indicating that this third-party relationship conferred a common law duty of care on defendant. *See generally* Opp'n. Indeed, it would seem an impossible task given the chorus of courts who have concluded that banks do not owe such a duty to third-parties under New York law. *See, e.g.*, *Renner v. Chase Manhattan Bank*, No. 98-cv-00926, 1999 WL 47239, at *13 (S.D.N.Y. Feb. 3, 1999) (collecting cases), *abrogated on other grounds by MLSMK Inv. Co. v. JPMorgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011); *see also*

*In re Agape Litig*., 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("Neither the [p]laintiffs nor the [c]ourt have been able to locate a case which even suggests that New York law imposes upon banks a duty to protect non-customers from a fraud involving *depository* accounts.").

Moreover, "[f]ederal courts may not announce a duty of care where the New York courts have declined to do so[.]" *Marchak v. JPMorgan Chase & Co.*, No. 15-cv-04297, 2016 WL 3911926, at *4 (E.D.N.Y. July 15, 2016). Therefore, plaintiff's negligence claim predicated on defendant's breach of an alleged common law duty of care fails as a matter of law. *See Century Bus. Credit Corp. v. N. Fork Bank*, 668 N.Y.S.2d 18, 19 (1st Dep't 1998) (concluding that bank was not liable for negligence to customer's creditors and observing that "to hold that banks owe a duty to . . . assure the creditors' collection of the depositors' debts would be to unreasonably expand banks' orbit of duty").

### ii. Statutory Duty

Plaintiff does, however, demonstrate that defendant owed it a statutory duty to comply with the Restraining Notice issued pursuant to Section 5222. Courts have recognized that banks may be liable to judgment-creditors for negligently failing to comply with restraining notices. *See Cruz v. TD Bank, N.A.*, 711 F.3d 261, 268 n.8 (2d Cir. 2013) (collecting cases). A Section 5222 restraining notice "is not a mere notice," but instead, "a form of process issued out of court intended to have the effect of [an] injunction." *Wimbledon Fin. Master Fund Ltd. v. Bienert Miller & Katzman, PLC*, 619 F. Supp. 3d 351, 372 (S.D.N.Y. 2022). Thus, compliance with Section 5222 is not discretionary and "[a] third party may be held liable to a judgment creditor for its negligence in complying with a restraining notice." *CSX Transp., Inc. v. Emjay Envt'l*

9

*Recycling, Ltd.*, No. 12-cv-01865, 2016 WL 755630, at *5 (E.D.N.Y. Feb. 25, 2016) (collecting cases).

The non-discretionary compliance required of a garnishee with a Section 5222 restraining notice, once it has actual notice of the restraining notice, confers a statutory duty owed to a judgment creditor. *See Wimbledon Fin.*, 619 F. Supp. 3d at 372 ("[U]nder New York law, the statutory duty owed to a judgment creditor to comply with a restraining notice is not limited to the judgment debtor. A third party may be held liable to a judgment creditor for its negligence in complying with a restraining notice[.]"); *see also Mazzuka v. Bank of N. Am.*, 53 Misc. 2d 1053, 1056 (N.Y. Civ. Ct. 1967) (concluding that bank "[u]ndeniably . . . was under a statutory duty owing to plaintiff as a judgment creditor to obey the [Section 5222] restraining notice"); *accord Salles v. Chase Manhattan Bank*, 820 N.Y.S.2d 845, 845 (N.Y. Sup. Ct. 2006) (concluding that the defendant bank "refuted any claim that it was deleterious in its duties with regard to the restraining notices . . . it received" from judgment creditor).

To the extent defendant argues that it did not owe a duty to plaintiff because plaintiff "cannot demonstrate that it is within some class for whom CPLR Article 52 was designed to protect," Mot. 10, the Court is unconvinced. The "primary purpose" of Article 52 is to "facilitate the enforcement of judgments." *Cruz*, 22 N.Y.3d at 74.[6] Thus, the statute

---

[6]    Defendant's argument that "[t]he *Cruz* court held . . . that there is no private right of action for violation of CPLR Article 52," misreads the *Cruz* court's holding. Mot. 7 n.5. There, the New York Court of Appeals resolved a question of New York law certified by the Second Circuit: "[W]hether judgment *debtors* have a private right of action for money damages and injunctive relief against banks that violate EIPA's procedural requirements." 22 N.Y.3d at 69 (emphasis added). The New York Court of Appeals answered that question in the negative, reasoning that there was "no basis to suppose that the legislature expected that injured judgment *debtors* would commence complicated and lengthy plenary proceedings to vindicate their rights." *Id.* at 77 (emphasis added). However, the

"provides procedures that can be invoked by judgment creditors . . . to secure remedies for wrongs arising under the statutory scheme." *Id.* And in addition to these procedural mechanisms, an aggrieved judgment creditor may bring a separate plenary action for damages arising from a bank's violation of a restraining notice. *Rosenblatt v. HSBC Bank USA, N.A.*, 7 N.Y.S.3d 874, 875 (N.Y. Sup. Ct. 2015); *see also Baltazar v. Houslanger & Assocs., PLLC*, No. 16-cv-04982, 2018 WL 3941943, at *13 (E.D.N.Y. Aug. 16, 2018) ("[A] bank's failure to obey a restraining notice served pursuant to § 5222 is punishable as a contempt of court and subjects the garnishee to personal liability in a separate plenary action . . . brought by the aggrieved judgment creditor.") (collecting cases); *accord Syndicate Bldg. Corp. v. City Univ. of N.Y.*, 607 N.Y.S.2d 551, 554 (N.Y. Ct. Cl. 1993) (observing that "claimant, as a judgment creditor, is a member of the class intended to be benefited" by C.P.L.R. § 5224(a)(3)).

Accordingly, as a matter of law, defendant owed plaintiff a statutory duty to comply with the terms of the Restraining Notice. *See Wimbledon Fin.*, 619 F. Supp. 3d at 372.

### B. Breach

Because plaintiff has established defendant owed it a statutory duty, the Court moves to the next prong of a negligence claim: whether defendant breached that duty.

To sustain a claim for negligence under New York law, a plaintiff must demonstrate that a defendant breached a duty owed to the plaintiff. *See Union Mut. Fire Ins. Co. v. Ace*

---

Court's holding did not disturb the proposition that "a judgment creditor may be able to bring a plenary action to punish a bank's contemptuous failure to honor a restraining notice[.]" *Id.* at 78. Nor did that case purport to address the existence of a statutory duty on the part of garnishee banks. *See id.* at 77 ("And we certainly do not rule out the possibility that other statutes governing debt collection might create non-contractual duties on the part of financial institutions that, if breached, could give rise to a private right of action.").

*Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023). And to show that a garnishee breached its statutory duties pursuant to Section 5222, "there must at least be a showing of negligence in failing to comply with the restraining notice." *Doubet, LLC v. Trustees of Columb. Univ. in City of N.Y.*, 934 N.Y.S.2d 33, 33 (N.Y. Sup. Ct. 2011), *adhered to on reargument*, 941 N.Y.S. 2d 537, *aff'd*, 952 N.Y.S.2d 16 (1st Dep't 2012); *see also Sec. Tr. Co. of Rochester v. Magar Homes, a Div. of R. John Magar & Son Devs.*, 461 N.Y.S.2d 103, 103 (4th Dep't 1983) ("[W]hile there is no willfulness requirement for imposition of money damages, there must at least be a showing of negligence in failing to comply with the restraining notice."). Here, plaintiff fails to adduce evidence that defendant negligently breached its duty to comply with the Restraining Notice.

The record evidence and undisputed facts indicate that defendant complied with Section 5222. On November 10, 2021, plaintiff's counsel served the Restraining Notice on defendant. 56.1 Stmt. ¶ 3. Defendant later informed plaintiff's counsel that it set aside funds in compliance with the Restraining Notice. 56.1 Stmt. ¶ 4. By letter dated November 22, 2021, on the letterhead of plaintiff's counsel, defendant was instructed to release the restraint. *See* 56.1 Stmt. ¶ 5; Mot. Ex. C ("Vrana Decl."), ECF No. 32-2. Releasing a restraint pursuant to a letter from a judgment creditor's counsel is a "common procedure because judgment debtors and judgment creditors regularly resolve their disputes following service of a restraining notice on a garnishee." 56.1 Stmt. ¶ 6. Indeed, plaintiff's counsel previously issued various "versions" of restraint release letters to defendant, each of which was "processed without any objection from counsel." 56.1 Stmt. ¶ 7. Accordingly, one week after the November 22, 2021 Release Letter, defendant released the funds and lifted the restraint on Coshell's accounts. 56.1 Stmt. ¶ 8.

Plaintiff argues that this conduct amounted to a breach of defendant's duty because a restraining notice issued pursuant to Section 5222 obligates a bank not to permit the withdrawal, transfer, or debit of funds subject to the restraint "other than for the purpose of satisfying the debt to the judgment creditor." Opp'n 6–7. Thus, in plaintiff's view, because defendant "negligently releas[ed] the funds to Coshell," defendant necessarily violated Section 5222 and, by extension, its statutory duty to plaintiff. Opp'n 7. The Court disagrees.

### i. Lack of Evidentiary Support

To begin, plaintiff has not contested defendant's version of the facts, nor has plaintiff pointed to sufficient admissible evidence, by testimony, affidavit, or otherwise, to raise a triable issue of fact as to this element. As mentioned above, plaintiff failed to submit a counter 56.1 statement, thereby conceding defendant's version of the facts. *See EVO Merch. Servs., LLC v. Fire USA Inc.*, No. 12-cv-06152, 2014 WL 3950653, at *4 (E.D.N.Y. Aug. 11, 2014) ("Here, since [the] [d]efendants failed to submit a counter Local Rule 56.1 Statement, the facts propounded in [the] [p]laintiff's statement are deemed admitted."). And plaintiff's opposition cites to only a single piece of evidence in support of its arguments: the Release Letter itself. *See generally* Opp'n. Therefore, plaintiff has not adduced more than a mere "scintilla of evidence" in support of its position, and there is insufficient "evidence on which the jury could reasonably find" for plaintiff. *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *see also Fioranelli v. CBS Broad. Inc.*, 551 F. Supp. 3d 199, 254 (S.D.N.Y. 2021) ("Plaintiff relies only on conclusory allegations, unsubstantiated speculation, and does not provide significant probative evidence on which a reasonable jury could decide in his favor[.]").

13

ii. Technical Compliance with Section 5222

Next, to the extent plaintiff suggests that defendant violated Section 5222 by releasing funds pursuant to a release letter from judgment creditor's counsel, *see* Opp'n 8–9, such a suggestion is belied by the history and structure of Article 52. The Fourth Report to the New York Legislature explained in its preliminary comments to Section 5222 that "[i]t is understood that an attorney who issues a restraining notice . . . may subsequently vacate or modify it in the light of new information." 4th Preliminary Rep. of Advisory Comm. on Prac. & Proc., Leg. Doc., Title 61 (1960). This understanding is consistent with the procedures set out in C.P.L.R. § 5222-a(f), passed by the New York Legislature in 2008 to amend "the scope of [a Section 5222] restraint that can be implemented against the bank account of a natural person." *Freeman v. Giuliana*, No. 24-mc-00353, 2024 WL 4467191, at *2 (S.D.N.Y. Oct. 10, 2024). That provision provides that where a "judgment creditor . . . by a writing dated after the service of the restraining notice, direct[s] the banking institution to release the funds in question to the other party . . . the banking institution *shall* release the funds as directed" upon receipt of the release. C.P.L.R. § 5222-a(f) (emphasis added).

Moreover, even if releasing the funds pursuant to the Release Letter amounted to a technical violation of Section 5222, this alone is insufficient to state a negligence claim. Plaintiff must also demonstrate that defendant *negligently* disregarded the restraining notice. *See Sec. Tr. Co. of Rochester*, 461 N.Y.S.2d at 104 (rejecting argument "that the bare fact that [the garnishee] failed to comply with CPLR 5222 [wa]s sufficient to render it liable for money damages"); *USA Auto Funding, LLC v. Wash. Mut., Inc.*, 819 N.Y.S.2d 213, 213 (N.Y. Sup. Ct. 2006) (explaining that a party aggrieved by a failure to honor a restraining notice "must show negligence in failing to comply with the restraining

14

notice"); *accord Cruz*, 22 N.Y.3d at 78 ("The fact that a judgment creditor may be able to bring a plenary action to punish a bank's contemptuous failure to honor a restraining notice does not establish that noncompliance with other technical aspects of CPLR article 52 can give rise to a plenary action for money damages[.]").

Plaintiff fails to point to any evidence or authority in support of its conclusory argument that defendant acted negligently. *See* Opp'n 6–8. Indeed, courts that have found garnishees negligent for violating restraining notices have done so where the defendants disregarded the notices completely, or released funds absent a directive from a court or judgment creditor. *See, e.g.*, *CSX Transp.*, 879 F.3d at 472 (concluding that the garnishees "plainly violated the [r]estraining [n]otices," where the garnishees "simply ignor[ed] the injunctive effect of the [r]estraining notices"); *Jackson v. TD Bank*, 957 N.Y.S.2d 636, 636 (N.Y. Civ. Ct. 2010) (denying motion to dismiss where "defendant failed to proffer even a scintilla of evidence showing that it complied with the restraining notice"). By contrast, the undisputed facts here demonstrate that defendant in fact complied with the Restraining Notice, setting aside funds and restraining Coshell's accounts until receiving a letter on plaintiff's counsel's letterhead directing the restraint to be released. *See* 56.1 Stmt. ¶¶ 3–8.

### iii. Standard of Care

Rather than meaningfully contest that defendant was permitted to release the restraint pursuant to a letter from judgment creditor's counsel, plaintiff instead argues that the Release Letter was fraudulent, and that defendant was negligent in failing to detect the fraud by "failing to verify the inaccuracies in the purported release letter." Opp'n 6. Specifically, plaintiff argues that defendant was negligent in "failing to institute and maintain adequate and sufficient internal controls" to prevent the allegedly

erroneous release of Coshell's accounts. Opp'n 7. Plaintiff further argues that defendant breached its duty by failing to investigate the purported release letter's "blatant red flags." Opp'n 7. Neither argument creates a genuine dispute of material fact such that a rational trier of fact could find for plaintiff.

At the outset, even when viewing the facts in the light most favorable to plaintiff, its conclusory allegation that defendant lacked sufficient internal controls is unsupported by any evidence, *see* Opp'n 7, and thus plaintiff fails to demonstrate that defendant breached its duty. Plaintiff fails to make any evidentiary showing of defendant's lack of internal controls, and does not dispute that defendant released the restraint consistent with its "common procedure" of processing releases pursuant to similar letters from plaintiff's counsel. *See* Vrana Decl. ¶ 6.

Furthermore, plaintiff fails to provide any "evidence bearing upon the standard of care ordinarily exercised by banks" to safeguard against fraudulent releases of restraining notices, "let alone that defendant failed to meet that standard." *Adam Int'l. Trading Ltd. v. Mfrs. Hanover Tr. Co.*, 542 N.Y.S.2d 1, 2 (1st Dep't 1989). Plaintiff's failure to provide evidentiary or legal support for its allegation that defendant violated the ordinary standard of care and thus breached its statutory duty is fatal to its negligence claim. *See Lewis v. Bureau of Alcohol, Tobacco & Firearms*, No. 16-cv-01057, 2018 WL 4853043, at *4 (E.D.N.Y. Oct. 4, 2018) ("In opposing summary judgment, it is not sufficient merely to assert a conclusion without supplying supporting facts or argument, and a party must instead set forth concrete particulars."); *cf. Putnam Rolling Ladder Co. v. Mfrs. Hanover Tr. Co.*, 74 N.Y.2d 340, 346 (1989) ("A customer could prove a bank lacked ordinary care by presenting any type of proof that the bank failed to act reasonably. In this case, plaintiff adduced such proof . . . in the form of *evidence* that [the defendant's] inspection

procedures were so superficial as to offer no realistic opportunity to detect forged checks.") (emphasis added).

Plaintiff's conclusory assertion that defendant was negligent in failing to investigate the authenticity of the Release Letter is similarly unavailing. *See* Opp'n 7. For one, plaintiff supplies no authority, including from the text of Section 5222, supporting the notion that defendant had a statutory duty to inspect or otherwise verify the authenticity of a release letter undisputably on the letterhead of judgment creditor's counsel. *See* Opp'n 7; 56.1 Stmt. ¶ 5. As discussed above, Section 5222 obligated defendant to restrain the funds until the judgment was satisfied, or until the restraining notice was vacated or modified in light of new information. The statute is silent as to a garnishee's duties, if any, with respect to authenticating an attorney's release letter. *See, e.g.*, *Digiulio v. Gran, Inc.*, 903 N.Y.S.2d 359, 453 (1st Dep't 2010) (dismissing negligence claim and rejecting argument that statute implicitly created a duty where the statute was otherwise silent as to the defendant's duties); *accord McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 277–78 (E.D.N.Y. 2011) ("[T]here is no requirement that a garnishee bank be required to investigate the validity of a restraining notice served upon it.").

### iv. Release Letter's Irregularities

For its part, defendant presents evidence of the reasonable care it used in complying with the Restraining Notice and in releasing the funds. Through the affidavit of one of its senior vice presidents, defendant attests that as part of its record-keeping procedures it processed various "different versions" of release letters from plaintiff's counsel, each without incident. Vrana Decl. ¶ 7. Defendant also attests that because of lockdowns due to coronavirus around the time of the Release Letter, it was "not unusual"

to receive correspondence from locations "other than those used by regular correspondents with Citibank . . . prior to COVID." Vrana Decl. ¶ 7.

In lieu of rebutting these assertions with evidentiary support, plaintiff asserts in conclusory fashion that the fraudulent nature of the release letter should have easily been discovered due to "blatant red flags." Opp'n 7. However, "conclusory allegations of counsel" are insufficient to preclude summary judgment "in the face of affidavits and documents" from defendant. *Almatrood v. Sallee Int'l, Inc.*, No. 83-cv-01800, 1985 WL 1359, at *4 (S.D.N.Y. May 13, 1985). This is particularly so where, as here, defendant makes some showing as to the reasonable care it exercised to comply with the restraining notice, namely, that defendant first set aside funds pursuant to the Section 5222 restraint, Vrana Decl. ¶ 4, and only released the restraint pursuant to a release letter on the letterhead of plaintiff's counsel, consistent with how it processed other "versions" of plaintiff's counsel's release letters, each without objection, 56.1 Stmt. ¶ 7. *Cf. Doubet*, 934 N.Y.S.2d at 33 (concluding that petitioner set forth sufficient evidence of negligence where respondent did "not ma[k]e any evidentiary showing which would dispute . . . its lack of care").

Moreover, even if defendant had a duty to investigate the authenticity of the Release Letter, plaintiff fails to adduce evidence that the "red flags" it complains of should have been considered such by defendant. *See* Opp'n 4. For instance, plaintiff does not cite to any evidence in support of its argument that the Release Letter contained "obvious alterations." Opp'n 4. Similarly, plaintiff fails to produce evidence that its previous release letters did not contain misspellings or typos such that a typo would indicate forgery. *Accord Esposito v. Suffolk Cnty. Comm. Coll.*, No. 16-cv-04833, 2019 WL 1044099, at *5 (E.D.N.Y. Mar. 4, 2019) ("While the [d]efendants have cast some doubt on the

18

authenticity of the documents, the flaws they identified are not so significant that the most probable explanation is forgery . . . an incorrect fax number on a letterhead is more easily explained as a typographical error than handwritten alterations and white outs."). And while plaintiff highlights that the Release Letter was sent from a Fedex location rather than plaintiff's counsel's office, it fails to rebut defendant's evidentiary showing that it "was not unusual for Citibank to receive faxes" from locations other than those normally used in its regular correspondence due to COVID lockdowns. Vrana Decl. ¶ 7.

Thus, irrespective of the significance plaintiff places on these "red flags," aside from a self-serving declaration from its counsel, plaintiff has "not produced any evidence to suggest that [defendant] should have realized" that it was being defrauded. *Almatrood*, 1985 WL 1359, at *6; *see also Lenzi v. L.L. Bean, Inc.*, No. 23-cv-06117, 2023 WL 8237484, at *2 (W.D.N.Y. Nov. 28, 2023) ("A conclusory contradiction of evidence in a self-serving affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact."); *Dean v. City of Buffalo*, 579 F. Supp. 2d 391, 408 (W.D.N.Y. 2008) ("Unsupported factual assertions made only in attorney's affidavits or memoranda do not suffice to raise triable issues of fact.") (collecting cases). Therefore, in light of plaintiff's failure to rebut defendant's evidentiary showing, coupled with defendant's undisputed efforts to comply with the Restraining Notice, plaintiff fails to demonstrate that defendant breached its statutory duty pursuant to Section 5222. *See Attick v. Valeria Assocs., L.P.*, 835 F. Supp. 103, 115 (S.D.N.Y. 1992); *see also Almatrood*, 1985 WL 1359, at *4 (granting defendant summary judgment where plaintiff did not "produce[] any [] evidence in support of their assertion that [the defendant] could have detected the forgeries").

\*       \*       \*

19

Accordingly, plaintiff fails to raise a triable issue of fact as to defendant's negligence and defendant's motion for summary judgment on that claim must be granted.[7] *See Attick*, 835 F. Supp. at 115 (granting summary judgment on negligence claim where plaintiff made "no showing that [the bank's] failure to discover the fraud was negligent," because plaintiff "was required to, but did not, submit factual or legal support for its allegation that [the bank] owed it a duty and breached that duty").

## V.    Negligent Supervision

"It is well settled under New York law that a claim for negligent . . . supervision can only proceed against an employer for an employee acting outside the scope of [his or] her employment." *Dewitt v. Home Depot U.S.A., Inc.*, No. 10-cv-03319, 2012 WL 4049805, at *8 (E.D.N.Y. Sept. 12, 2012). Therefore, "where an employee is acting within the scope of his or her employment . . . no claim may proceed against the employer for negligent hiring or retention." *Id.* Plaintiff does not contend that any supposed tortfeasor acted outside the scope of their employment in releasing the restraint on the funds pursuant to the Release Letter. *See generally* Opp'n.

Indeed, plaintiff "never identifies a tortfeasor," even with the benefit of discovery. *Ogbon v. Beneficial Credit Servs, Inc.*, No. 10-cv-03760, 2011 WL 347222, at *6 (S.D.N.Y. Feb. 1, 2011); *see also Bennett v. Target Corp.*, No. 16-cv-05816, 2019 WL 7556361, at *11 (E.D.N.Y. Jan. 2, 2019) ("Plaintiff fails to make out a prima facie case of negligent hiring because she does not identify a single employee of the [d]efendant who participated in

---

[7]    Because the Court concludes that plaintiff fails to demonstrate a triable issue of fact that defendant breached its duty to plaintiff, the court does not reach whether plaintiff demonstrates a triable issue of fact as to causation. *See Cousin v. White Castle Sys., Inc.*, No. 06-cv-06335, 2009 WL 1955555, at *9 n.6 (S.D.N.Y. July 6, 2009) ("[S]ince plaintiff cannot establish breach, the Court need not determine the sufficiency of her causation evidence.").

the events leading to the [p]laintiff's injury."); *Dennis v. Napoli*, Index No. 153857/2014, 2015 N.Y. Misc. LEXIS 3020, at *20 (N.Y. Sup. Ct. Aug. 12, 2015) ("At a minimum, in order to state a claim for negligent hiring and supervision, plaintiff must first identify the employee defendants negligently hired or supervised[.]"). Therefore, plaintiff's negligent supervision claim fails as a matter of law.

## VI.    Section 5222

Finally, plaintiff brings a standalone claim for defendant's alleged violation of the Restraining Notice. *See* Compl. ¶¶ 64–68. The Court construes this claim to be a claim for contempt. *See Baltazar*, 2018 WL 3941943, at *13 ("[A] bank's failure to obey a restraining notice served pursuant to § 5222 is punishable as a contempt of court[.]"). However, the refusal to obey a restraining notice is punishable by contempt only where a plaintiff "prove[s] that the [garnishee's] actions were willful by clear and convincing evidence." *CSX Transp.*, 2016 WL 755630, at *5. To meet such a burden, plaintiff must show that defendant "had the capacity to comply with a court order but did not make a good faith effort to do so." *Id.* Plaintiff plainly fails to adduce such evidence here. Indeed, plaintiff emphasizes throughout its brief that defendant attempted, but negligently failed, to comply with the Restraining Notice. *See* Opp'n 6–7. And defendant demonstrates that it complied with the mandates of Section 5222, consistent with its procedures and policies. *See* Vrana Decl. ¶¶ 1–9. Accordingly, plaintiff's claim for "violation" of the Restraining Notice must be dismissed.

## CONCLUSION

For the reasons stated above, defendant's motion is granted. Plaintiff's complaint is hereby dismissed. The Clerk of Court is respectfully directed to enter judgment and to close the case.

**SO ORDERED.**


   _/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge


Dated: August 5, 2025
Brooklyn, New York